We'll hear argument next 12-1206 BASF AGRO v. MAKHTESHIM AGAN of North America, Inc. Mr. Gallo, when you're ready. Mr. Mayor, thank you. May it please the Court, Ken Gallo from Hall Weiss for the appellants. I've asked to reserve five minutes for your permission. The patents at issue here relate to a process for the effective treatment to protect buildings from insects and particularly termites. The central issue is that the District Court erroneously construed the term barrier to include a continuous treatment on only one side of the building. That would leave the other half of the building wholly unprotected from termite infestation. This was not the ordinary and customary term, the use and definition of the word barrier in 1996. It is undisputed in this case that the ordinary and customary meaning of barrier in 1996 was a complete barrier around both sides that substantially blocked all potential areas of entrance. That may be true, but during the prosecution of the patent, your client tried to get around prior art by limiting the claims to treating the pesticide at very distinct areas, as opposed to all around a house, whether inside, under, or outside. Yes, Your Honor. The District Court, in our opinion, respectfully, that issue that you're focused on is exactly where the District Court went awry. The District Court said that the Hope Declaration, which was submitted as part of the prosecution, constituted a clear redefinition of the term barrier and redefined it to include a treatment only on one side of the building. Of course, the law on this is clear that such a redefinition has to be clear and it has to be unmistakable. And we respectfully submit that a reasonable reading of the Hope Declaration, it cannot lead to the conclusion that there was a clear and unmistakable redefinition of the term barrier. When we look at the acts that you're describing and the Hope Declaration being used as the lexicographer is redefining a relevant term, but don't we also have to look at the remaining of the patent, at the specification and the claims where it clearly said that the pesticide was meant to be administered in very distinct locations? You have a figure in the patent that shows that. And isn't that consistent with what the court decided the Hope Declaration attempts to do? Your Honor, let me take those one at a time if I might. Because neither the specification, it was really column 1, line 10 to 12 that the court referred to in the specification, nor the Hope Declaration provide a clear and unmistakable redefinition of barrier to mean one side or the other or both. Let's make sure we're all on the same page. I think we are. But just to make sure, when you say one side, when you initially said one side but not the other side, I was thinking you were referring to the left side but not the right side. That's not what you're saying. You're saying the outside versus the under or sometimes we say under, sometimes we say inside. I think when we say under, what we really mean is also to say inside. Correct, Your Honor. When I say one side for shorthand, I apologize. You really are talking about perimeter, outside, not under, slash, inside. What we believe is undisputed in this case is that in the prior art, everyone recognized that in the prior treatments, rather, that what happened in the real world in 1996, and it's undisputed and their expert agreed at that position, is people who perform this would put it around the outside and around the inside. The reason for that is pretty simple and the district court acknowledged it because a termite can enter from inside under the building through the dirt or from outside into the building. It doesn't matter which way the termite gets in, it still infests the building and still does the damage and that's undisputed. Now, Kamara comes along and says, for the first time, I have a treatment that allows you not to have to cover every single spot and the district court, and then Kamara says, without barrier. That's the disclaimer, without barrier. We agree it's a disclaimer. But the question is, does it mean that he's disclaiming a treatment that is both sides, which is what we contend, or does it mean he's disclaiming a treatment that even has a barrier only on one side, and we say that makes no sense. It makes no sense because when you think about where the judge ended up on a claim construction, and Regina, I am going to return to the specification and I haven't forgotten. I will go back there in one minute, but let me just finish this thought. The whole point of this invention was to protect the building from termite damage. The district court recognized that termites could enter from under or inside or outside. The specification says loopholes in the treatment cause a failure. Yet the district court construes the patent and the barrier disclaimer to say that one whole side of the building could be left unprotected, either the inside or the outside, in a situation where the whole point of the invention is to add a loophole. It makes very little sense to say we're going to have one whole side unprotected when everybody understands that termites can enter, but I'm going to add a loophole on the other side. It doesn't make sense in the context of the patent. Now, with respect to the specification, your honor, the judge referred to lines 10 through 12 of column one of the specification. Let me just interrupt you for a second, if I can. To go back to the Hope Declaration, this is I suppose a small point since it involves only one word, but it's perhaps an important word, and that is the and slash or word that's used in paragraph 16 of 886. If that word had been read and, then it would seem to me you'd have a pretty good argument, but it doesn't. It reads and slash or, which suggests that barrier can be defined to include only the one, that is to say a perimeter only, not inside. It does suggest that, your honor, but we respectfully submit that with a closer reading, what you see is that Hope is talking with respect to, for example, the Mesilchik patent, and when he says and or, he's talking about two different events. He's talking about the original construction of the barrier on both sides, inside and outside. And he's also then talking about the fact that sometimes you have a failure in the barrier, and the barrier needs to be regenerated, and a person comes back and only applies some on one side or the other side to fix a regeneration where there's a hole. So he is talking conjunctively about two different kinds of events, the original construction of the barrier. Well, this is a one, this 16, paragraph 16 is one sentence, and the sentence does seem to say a method, dot, dot, dot, that involves placing under a concrete slab and or around a house to optimize the dose, and that this method, either under the slab or around the house is understood by a person of ordinary skill, in the art, as a method of creating and regenerating a barrier. With respect, the Mesilchik patent talks about both originally creating the barrier and regenerating the barrier in the case of something's disrupted, in which case, you wouldn't need to go do the whole barrier, you'd only need to do a spot treatment. So, the question though, I understand that it's ambiguous, but the question, oh, there's no doubt. Maybe the specification adds clarity to that ambiguity. The specification says, and this is in column one, you were headed right there, right around line 10 through 12, conventional termite control operators apply the chemical around or under the building. Right, your honor, it does, but in that same sentence, it refers to conventional treatment, and it's undisputed that conventional treatment referred to in that sentence was a full barrier treatment on both sides of the building. No, it says or. In different contexts. In this context, we believe it means both. Well, counsel, you have, at 37 and 38, you cite a list of cases relating to exactly what you're talking about, and those cases show, you say, that or, as used in the phrase around or under, need not carry a disjunctive meaning. It could, right. Okay. Do you have any cases that say, from this court, saying that or means and? Well, in the, it can mean, no, your honor, let me be clear about our point here. It's a very important point, and I'm glad you raised it. We suggest it means either or both, and in the 3M case, this court which we cite, this court found it to mean either or both, and then that case was cited with approval in a subsequent case that we cited in our brief. And my point is that this is ambiguous, but the standard is he's got to clearly redefine it, and the reason it's ambiguous is because sometimes you're talking about the original creation of the barrier. Sometimes, as in Mesilchik, you're talking also about regenerating a barrier where it is a repair. Now, look, to go to that language, it begins with a conventional treatment. Which language? I'm sorry. I'm sorry. Go back to line 10, column 1. The pen language. Yes. The very next sentence contrasts that with forming loopholes. At line 12, it contrasts the conventional treatment with forming loopholes, which was what Comura was inventing. And respectfully, Your Honor, it makes no sense to talk about a home, for example, with a barrier around only the outside, nothing at all on the inside, and then Comura is going to come along and invent the idea of adding a loophole on the outside. The entire inside is one massive loophole, if that's what is envisioned. In the context of the patent, that construction doesn't make sense. I'm sorry, Your Honor. I was just going to say, you're into your rebuttal time. Thank you. I would have, too. Thank you very much. Appreciate it. Mr. Dingen. Thank you. The inventor made it clear, as the Court has already noted, that he claimed treatments without barrier, and he said in the lines in column 1 to which you've been referring, that a barrier is formed when insecticide is applied around or under a building. Now, that suggestion, that a barrier is an application of a continuous treatment around a building or under a building, is in fact perfectly consistent with the prior art and extrinsic evidence. It is true, as Mr. Gallo says, that there are many teachings that in order to protect a building from termite invasions, you must create multiple barriers, a barrier around and a barrier underneath. But that does not affect the meaning of the term barrier. If you look at their principal reference, which is not only quoted but illustrated at page 3 of the blue brief, you see a drawing that shows, and it looks like this, a drawing that shows insecticide applied on the outside around, which is called a vertical barrier. And insecticide applied underneath the foundation, which is called a horizontal barrier. And your argument is those are two barriers, not one. Those are two barriers, not one. Well, it's not just my argument, that's what the prior art teaches. That was from the approved reference manual. The handbook of pest control, which is also relied on, says the same thing. Yes, in order to fully protect a building from termites, you have to create a vertical barrier, which is a barrier around the perimeter, and you have to create a horizontal barrier, which is underneath the foundation. So, there is no terminological inconsistency between the use of the term barrier in the patent and the use of the term barrier in the prior art in which BASF results. What the patentee said is that my method doesn't have any barriers. And he had good—Mr. Gallo suggested it didn't make any sense from the point of view of somebody seeking a patent. It made perfect sense. The inventor had good reasons to disclaim treatments that form the barrier either around the building or under a building, because that was the prior—because those treatments were disclosed, started to be disclosed, in the prior art that the examiner had confronted the applicant with. Take, for example, the Crosby patent. That was a patent that on its face, and as the examiner understood it, involved drilling holes around the building, not under it, just around the building at discrete locations, and squirting insecticide into the soil. And that was one of the pieces of prior art in which the examiner said, all right, well, how is that different from what you're claiming? In the end, what they said was that, well, the insecticide poured into the soil in the Crosby patent vaporizes, and it expands from the places, and it creates a barrier around the building. There is no suggestion in the Crosby patent that the vapor travels underneath the foundation and forms a barrier under the building, and there is no evidence whatever in the record that Crosby involves creating a barrier under a building. Indeed, the testimony that BASF cites from their expert, Dr. Potter, suggested that he wasn't even sure it would work at all. But certainly, what the inventor faced as he was trying to persuade the examiner to grant a patent covering what he claimed was his invention was prior art that, as characterized by his own declarant, created a barrier around, but not under, a building. So it was essential for the inventor to say, well, my invention is different. My invention doesn't create a barrier at all. It doesn't create it around a building, a vertical barrier, and it doesn't create it under a building, a horizontal barrier. It doesn't have a barrier at all. And he needed to say that, or at least he perceived that he needed to say that to get the patent in the first place. You could ask, could he have gotten a patent that claimed a barrier only on one side? Who knows? That isn't the patent that he asked for. Is there somewhere in the intrinsic evidence any indication as to what the term perimeter, set aside barrier for a moment, the term perimeter means in this art? I mean, we're throwing the word perimeter around, and if perimeter means only, let's suppose, the line which is drawn, for lack of a different point, at the ground level, around the four corners of the building, and no more, if that's the perimeter of the building, and in other settings it would be assumed to be, then that would seem to exclude the second half of the barrier when we refer to perimeter. But if perimeter includes also the area under the building, if it's used in that way, then that would give force, it seems to me. I think the intrinsic evidence, the characterization, for example, in example one, they said it was a 10 by 15 building, so the common sense notion of perimeter is that 30 plus 20, 50 meters is the perimeter, and I think that's the part, the patent really only makes sense if you assume the perimeter in example one is 50 meters. Is that the way the word perimeter is used in that example, or in connection with that example? Because I don't recall exactly how that's characterized. Well, I'm not sure that it matters, your honor. I'm not trying to fight your question. I think perimeter, I think the judge correctly construed the term perimeter as having its common sense meeting you. Add up the length of all the sides of the building and that's your perimeter. The argument that BASF is making is that total perimeter means twice that. You have to count the outside and the inside and add them together, so in a 10 by 15 building your perimeter is 100 meters and not 50 meters. I think that's counterintuitive and I find very little suggestion in the patent to support that reading. But in a sense, again, I suggest it really doesn't matter, that the case really turns on what the meaning of the disclaimer is, and the disclaimer was for barriers, and that both the extrinsic evidence and the intrinsic evidence in the patent and prosecution history make it quite clear what a barrier is, and it includes a continuous treatment around the building, which the authorities at the time called a vertical barrier, and it included creating a continuous treated region underneath the building, which the authorities at the time called a horizontal barrier. There is no dispute that my client's product creates a barrier in that sense. There is no dispute, unambiguous instructions to create what the authorities call a vertical barrier, a barrier around the building. Let me just call your attention to the passage that has provoked me to ask this question about perimeters with respect to barrier, and that's at 882, the appendix, the sentence that is three lines down from the top. Dr. Hobo verifies that the cited priority is all directed to so-called barrier treatment techniques, wherein a complete barrier is formed around the perimeter of a structure to be protected. Now, if perimeter in that setting means only the 50 meters that you were referring to, then that supports you. If it means more than that, it supports your opposing counsel, it seems to me. That's why I'm curious. I think it is, and I think there's precious little evidence that perimeter has any meaning other than its commonsensical meaning. I just see very little evidence of that. But nothing that nails that question down hard, right? It says it's a 5 by 10 meter perimeter, and it says the treated area, which is reflected by the black squares, represents 5 meters per 10 meters of perimeter. And the black areas maybe cover half of the external perimeter, but if the total perimeter includes the interior as well, there's no way that that sentence makes any sense. And finally, I think if you accept, and I think you should, the notion that a barrier is a term that includes a vertical barrier and a horizontal barrier, the disclaimer is that my invention, the inventor said to the examiner, my invention doesn't have any barriers at all. The judge construed that as a disclaimer, and therefore a limitation on the claim was no barrier. The fact that the claim is a comprising claim, uses the transition comprising, doesn't allow the patentee to avoid the need to have an element of the claim pressed. If your claim is A, B, and C, comprising A, B, and C, it may be that you can add D, but you can't add not C. And that's the reason that the comprising term doesn't help the ASF in its claim if you accept, as you should, the district court's claim construction and construction of the disclaimer. If there are no more questions, I'll sit down. Thank you. Mr. Gallo, you have a couple of minutes with three and a half minutes. Thank you, Your Honor. I'd make three or four quick points. Number one, the patent does not talk about horizontal versus vertical barriers. It talks about the barriers. So that is not in the patent. It's not in the specification. It's not in the prosecution history. Number two, I encourage Your Honor, I respectfully request the court, when you look at something like the Hope Declaration, when we read it in its entirety, in addition to using the word or, which creates the ambiguity, it also says it's intended to, quote, ensure that it's not possible for the termite to get to the building without crossing insecticide. It talks about the insecticide being unavoidable to the termite. On page 882 that Judge Bryson, you referred to, in parentheses at the end of that sentence about the perimeter, it uses the words, there are no untreated locations. And respectfully, as a matter of common sense and the context of this patent, you cannot ensure that a termite doesn't get to a building. You cannot make the insecticide unavoidable. You cannot have no untreated locations if you're leaving an entire half of the structure with no insecticide on it. Particularly in light of the two undisputed facts that persons of ordinary skill in the art thought of a barrier as being on both sides. Their expert admitted that, notwithstanding the argument you just heard for the first time about two different barriers. That's not in the record. That's pure lawyer argument. Their expert admitted at deposition that the barrier was that at the time of 1996, a barrier meant a treatment on both sides. Connelly Bove Law Firm that submitted the Hope Declaration provided an explanation that said the prior art treatment says the termites can't reach the building. That's just flat. That's not true if you define a barrier as only on one side. That's inconsistent with the specification language we addressed. Where you clearly say around or under a building or houses to form a barrier. It does say around or under and there's no question that that's the hardest issue for us. But what I respectfully submit is in common usage and in the law. Or can also mean both. Either or both. And that's what we respectfully submit it means. And then read in context. Where at first in that same sentence refers to the conventional treatment in 1996. Which is undisputed to mean a complete barrier on both sides. And read in context of like Mesilchik where there are occasions where you only treat one side to regenerate a barrier. I'm sorry go ahead. The very next sentence contrasts it with a treatment with loopholes. And you say to yourself now does that mean that he's talking about having an entire half of the structure unprotected before the treatment goes on. Read together it creates enormous ambiguity. The district court judge said in his Markman opinion. It says neither the claim nor the specification make fully clear what barrier means. He then goes on to find that it was clearly redefined. So I'm not obviously he reaches a different conclusion. But early in the opinion he says the specification and the prosecution history don't make it clear. And I ask your honors respectfully to contrast that with the law of this court. Which says it must be clearly and unmistakably redefined. Let me ask you if I can a factual question. Just very briefly to clarify this for me. Because I found this puzzling. You're building a building that you want to treat with a complete barrier. Let's assume it's slab construction. With concrete slab. Where do you put the under portion of the treatment? That is the value of the Kemur invention. What used to happen. What is the convention? What was the old? That's exactly what I'm thinking. What used to happen is they would go around the outside of the house. Your house would drill every six inches or so. They would come into your basement and drill holes every six inches to get it under the floor. And that's what Kemur. Unless they put it in before they put the slab. Right of course. Or if in pre-construction you put it in and then you put the slab on top of it. But that was the invention that Kemur came up with. Was saying you don't have to go and drill holes in the basement anymore. You can put it around the outside. And you can pick a couple of spots on the inside. And have loopholes. That's the value that revolutionized. Alright. Thanks. Thank you. We thank both counsel. The case is submitted.